IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

FILED

03 AUG -5 AM 9: 58

U.S. DISTRICT COURT
N.D. OF ALABAMA

P8

ENTERED

AUG - 5 2003

| | |
|---|---|
| JAMES EDWARD NORRED, individually, and as the custodial parent and next friend of JAMES EDWARD NORRED, II, a deceased minor; JENNIFER NORRED, individually, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN MARK TIREY, individually and in his official capacity; JOHN CURTIS "J.C." POE, individually and in his official capacity; TRENT MCCLUSKY, individually and in his official capacity; RONALD PEARSON, individually and in his official capacity; HOWARD LAWRENCE, individually and in his official capacity; JEAN FRANKLIN, individually and in her official capacity; BRUCE HAMRICK, individually and in his official capacity; DUAL TUBBS, individually and in his official capacity; WES EATON, individually and in his official capacity; BEN HUDGENS, individually and in his official capacity; and, RANDY BRIDGES, individually and in his official capacity, <br><br> Defendants. | CV 02-JEO-2596-J |

## **MEMORANDUM OPINION**

The plaintiffs in this action have filed various claims against the defendants premised on

the suicide of James Edward Norred, II (hereinafter "Norred"), at the Walker County Jail. The

defendants named in this action are Walker County Sheriff John Mark Tirey, former Chief

Deputy J.C. Poe, Officer Trent McClusky, Sergeant Ronald Pearson, former Officer Howard

36

Lawrence, Walker County Administrator Jean Franklin, and Walker County Commissioners Bruce Hamrick, Dual Tubbs, Wes Eaton, Ben Huggins, and Randy Bridges.[1]  The plaintiffs initially assert that each of the defendants violated Norred's Eighth and Fourteenth Amendment rights, in contravention of Title 42, United States Code, Section 1983.  (Complaint at ¶¶ 1, 18-19 (Count One)).[2]  They also allege various state law claims, including negligent and wanton hiring and retention against Tirey, Poe, Lawrence, and McClusky ("the law enforcement defendants") (Count Two at ¶¶ 25-26); negligent and wanton training and supervision against the law enforcement defendants (Count Three at ¶¶ 31-32); negligence and wantonness against the law enforcement defendants and Pearson for failing to dispose of "tools of suicide" (Count Four at ¶ 36); negligence and wantonness against the law enforcement defendants and Pearson for failing to provide medical attention and medication as required by ALABAMA CODE § 14-6-19 (Count Five at ¶ 39); negligence and wantonness against all the defendants except Pearson for failing to provide adequate funding (Count Six at ¶ 42); and wrongful death against all the defendants (Count Seven at ¶ 44).  The defendants are sued in their official and individual capacities.  The plaintiffs seek monetary damages and other "relief as is just and proper."  (Complaint at 5-10).

The defendants filed their motion to dismiss, asserting that (1) fictitious party pleading is not permitted; (2) Commissioners Hamrick, Tubbs, Eaton, Huggins, and Bridges are entitled to absolute immunity; (3) defendants Tirey, Poe, McClusky, Lawrence, and Pearson, as law enforcement officers cannot be held liable on a *respondeat superior* theory; (4) the Eighth Amendment is not applicable because Norred was a pretrial detainee; (5) the plaintiffs cannot

---

[1] According to the defendants' memorandum brief, Poe and Lawrence have retired from the Sheriff's Department and Eaton is no longer on the Walker County Commission.  (Doc. 19).

[2] The complaint is located at document 1.

2

assert negligence or wantonness claims against these defendants; (6) the official capacity claims against the officers are barred; (7) the individual capacity claims against the defendants are precluded by qualified immunity; (8) the state law claims are due to be dismissed premised on sovereign immunity; and, (9) the claim for punitive damages is due to be stricken.  (Doc. 18 at ¶¶ 1-9).  The defendants also state that the plaintiffs' response and brief are due to be struck because they were untimely filed.  (*Id*. at 1-2).

## MOTION TO DISMISS STANDARD

On a motion to dismiss, the court "must accept the allegations set forth in the complaint as true. *See United States v. Pemco Aeroplex, Inc.,* 195 F.3d 1234, 1236 (11ᵗʰ Cir. 1999) (en banc)." *Lotierzo v. Woman's World Medical Center, Inc.*, 278 F.3d 1180, 1182 (11ᵗʰ Cir. 2002). Similarly, it must construe all the factual allegations in the light most favorable to the plaintiff. *Sofarelli v. Pinellas County*, 931 F.2d 718, 721 (11ᵗʰ Cir. 1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1947)).  Such a motion may be granted only "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)." *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11ᵗʰ Cir.), *cert. denied*, 525 U.S. 1000, 119 S. Ct. 509, 142 L. Ed. 2d 422 (1998).

## DISCUSSION

The plaintiffs assert that the suicide of Norred occurred after he was incarcerated in the Walker County Jail.  According to the complaint, at the time of his arrest, he was suffering from depression and psychosis with suicidal ideation.  (Complaint at ¶ 10).  Several members of his family called unidentified members of the Walker County Sheriff's Department following his

3

arrest to notify them of his condition. They requested that Norred be put on a suicide watch. (*Id.*
at ¶ 11). The complaint also alleges that Norred's treating physician called the Jail and spoke to
defendant Pearson, requesting that Norred be placed on suicide watch. (*Id.* at ¶ 12). The
plaintiffs further allege that the Jail was overcrowded and lacked sufficient personnel to
adequately monitor and supervise the inmates and that the defendants were aware or should have
been aware that the Jail was understaffed, underfunded, and inadequately monitored. (*Id.* at ¶¶
14-15).

### Timeliness of the Plaintiffs' Response

The defendants initially assert that the plaintiffs' response was untimely. At the hearing
on the motion, counsel for the defendants acknowledged that the response was timely. On
December 27, 2002, the court entered an order providing that the plaintiffs would have until
January 10, 2003, to respond. (Doc. 20). On December 30, 2002, counsel for the plaintiffs
requested an additional twenty (20) days to respond. (Doc. 21). The motion was granted and the
court afforded the plaintiffs the additional time. (Doc. 22). The plaintiffs' response was due by
January 30, 2003. It was filed on January 27, 2003. (Doc. 23). The court finds, therefore, that
the response was timely.

### Fictitious Party Pleading

The defendants also move to strike the fictitious party allegations in the complaint. In
support thereof, they cite to *New v. Sports and Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th
Cir. 1997), "holding fictitious party practice not permitted in federal court and plaintiff's failure
to name parties required that court strike parties." (Doc. 19 at 2). The plaintiffs' retort that
fictitious party pleading is now allowed for state claims. (Doc. 23 at 3). They principally rely on

4

*Saxton v. ACF Industries, Inc.*, 254 F.3d 959 (11ᵗʰ Cir. 2001), and *Gaines v. Choctaw County*

*Commission*, 242 F. Supp. 2d 1153 (S.D. Ala. 2003). In *Gaines*, the court stated as follows:

> [Defendants] have moved to strike the fictitious parties and, in support, cite *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11ᵗʰ Cir. 1997) as holding that fictitious party practice is not permitted in federal court. In fact, the footnote cited merely points out, as part of the procedural background, that plaintiff had conceded that fictitious party practice was not permissible. The Eleventh Circuit held only that § 1447(d) precluded appellate review of the lower court's remand order. *Id.* at 1095-97.
>
> According to Professors Wright, Miller, and Cooper, "there is no express statutory or rule prohibition against [the use of fictitious parties]." Charles A. Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure § 3642 (3d ed. 1998). Moreover, "[s]ince the practice plays an important part in some states in the tolling of the statute or limitations and in the procedure for acquiring personal jurisdiction, an absolute rule against its use in federal court actions seems unwise and might violate the federal court's obligation to apply the rules of decision of the forum state." *Id.* This is especially true in cases removed from Alabama state courts based on diversity where the inclusion of fictitious parties may have a bearing principles of relation back. *See Saxton v. ACF Industries, Inc.*, 254 F.3d 959 (11ᵗʰ Cir. 2001) (en banc) (holding that under FED. R. CIV. P. 15(c)(1) Alabama relation back principles, including substitution of named defendant for fictitious party, apply after removal where state law provides limitations period). Therefore, the Court declines to strike the fictitious defendants.

*Gaines*, 242 F. Supp. 2d at 1166. The defendants herein assert that the cases cited by the

plaintiffs "do not consider federal cases which applied federal law or which did not explicitly

indicate that state law was applied." They further assert that "[t]he plaintiffs ignore countless

federal cases which like *Adams v. Franklin*, 111 F. Supp. 2d 1255[, 1259] n.3 (M.D. Ala. 2000),

have held that 'fictitious party practice is not authorized by either the Federal Rules of Civil

Procedure or any federal statute" and cite to *New*, 114 F.3d 1092; *Edwards v. Alabama*

*Department of Corrections*, 81 F. Supp. 2d 1242, 1257 (M.D. Ala. 2000); and *Harris v. Palm*

*Harbor Homes, Inc.*, 198 F. Supp. 2d 1303 (M.D. Ala. 2002).

Unlike many of the above-cited cases, this matter involves federal and state law claims. Accordingly, there are varying considerations involved in whether to strike fictitious parties as demonstrated above. However, this issue becomes a nonissue because following resolution of this motion, the parties will be required to conduct a parties planning meeting and to submit a proposed scheduling order. One of the proposed deadlines will be for the parties to add new defendants, claims, or defenses. Thus, the need for fictitious party pleading is obviated. The motion, to the extent it requests that the fictitious parties be struck, is due to be granted without prejudice to the ability of the plaintiffs' counsel to amend the complaint at a later juncture within the allowable time limits.

### Applicability of the Eighth Amendment

The defendants assert that the plaintiffs' Eighth Amendment claims are not appropriate because Norred was a pretrial detainee at the time of his death. (Doc. 19 at 4). The plaintiffs assert that that fact does not matter because the relevant consideration is whether the circumstances amount to punishment. (Doc. 23 at 6).

In *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996), the Eleventh Circuit stated as follows:

> Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. *E.g., Bell v. Wolfish*, 441 U.S. 520, 535 & n.16, 99 S. Ct. 1861, 1872 & n.16, 60 L. Ed. 2d 447 (1979); *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 n.4 (11th Cir. 1995); *Jordan v. Doe*, 38 F.3d 1559, 1564-65 (11th Cir. 1994). However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees. *E.g., Jordan*, 38 F.3d at 1564-65 (citing *Hamm v.*

*DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S. Ct. 1492, 89 L. Ed. 2d 894 (1986)).

"'[I]n a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under either the eighth or fourteenth amendment, the plaintiff must show that the jail official [defendant] displayed "deliberate indifference" to the prisoner's taking of his own life.' *Edwards v. Gilbert*, 867 F.2d 1271, 1274-75 (11th Cir. 1989) (citations omitted)." *Tittle v. Jefferson County Com'n*, 10 F.3d 1535, 1539 (11th Cir. 1994).

Deliberate indifference, in the context of a jail suicide case, is a question of whether a defendant was deliberately indifferent to an individual's mental condition and the likely consequences of that condition. *Wright v. Wagner*, 641 F.2d 239, 242 (5th Cir. Unit A March 1981).[ ] Moreover, in this circuit a finding of deliberate indifference requires that officials have notice of the suicidal tendency of the individual whose rights are at issue in order to be held liable for the suicide of that individual. *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990) (noting that "[a]bsent knowledge of a detainee's suicidal tendencies, the cases have consistently held that failure to prevent suicide has never been held to constitute deliberate indifference.")[ ] In *Schmelz v. Monroe County*, 954 F.2d 1540, 1545 (11th Cir. 1992), this court explained that "[n]o matter how defendants' actions might be viewed, the law in this circuit makes clear that they cannot be liable under § 1983 for the suicide of a prisoner "who never had threatened or attempted suicide and who had never been considered a suicide risk.'" (quoting *Edwards*, 867 F.2d at 1277).[ ] Finally, this court finds that deliberate indifference can only be established where a plaintiff demonstrates a "'strong likelihood, rather than a mere possibility,'" that suicide would result from a defendant's actions or inaction. *Edwards*, 867 F.2d at 1276 (citations omitted). Thus, the mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners. *See Popham*, 908 F.2d at 1564.

*Tittle*, 10 F.3d at 1540 (footnotes omitted). *Accord Cagle v. Sutherland*, ___F.3d ___, 2003 WL 21398226 (11th Cir. June 18, 2003).

Accordingly, the plaintiffs' Eighth Amendment claim is due to be dismissed and their Fourteenth Amendment Due Process claim is due to be assessed under the foregoing considerations.

### Absolute Immunity Claims of Commissioners Hamrick, Tubbs, Eaton, Huggins, and Bridges and of County Administrator Jean Franklin

Defendant County Commissioners and the County Administrator, Jean Franklin, assert that they are entitled to absolute legislative immunity because their involvement with the jail is a consequence of their legislative duties. (Doc. 19 at 3). In support of their position, they rely upon *Bogan v. Scott-Harris*, 523 U.S. 44, 54, 118 S. Ct. 966, 972, 140 L. Ed. 2d 79 (1998); *Wood v. Strickland*, 420 U.S. 308, 317, 95 S. Ct. 992, 998, 43 L. Ed. 2d 214 (1975); *Woods v. Gamel*, 132 F.3d 1417, 1420 (11th Cir. 1990); *Ellis v. Coffee County*, 981 F.2d 1185, 1190 (11th Cir. 1993); *Finch v. City of Vernon*, 877 F.2d 989, 993 (11th Cir. 1987); *Healy v. Town of Pembroke Park*, 831 F.2d 989, 993 (11th Cir. 1987). The plaintiffs' retort that legislative immunity applies only with regard to the defendants' actions involving general legislative acts, not for actions that include the running and maintaining of the jail. (Doc. 23 at 4-5). They rely upon ALABAMA CODE § 11-14-10 (1975);[3] *Turquitt v. Jefferson County*, 137 F.3d 1285, 1291 (11th Cir. 1998); *Woods*, 132 F.3d at 1420; *Yeldell v. Cooper Green*, 956 F.2d 1026 (11th Cir. 1992); *Smith v. Lomax*, 45 F.3d 402, 405 (11th Cir. 1992); and, *Deeton v. Colbert County*, 558 So. 2d 884, 886 (Ala. 1989).

In *Woods*, the Eleventh Circuit Court of Appeals stated as follows:

Legislators have absolute immunity under section 1983 when they are

---

[3] The statute provides in pertinent part:

§ 11-14-10. **Duty to erect courthouses, jails, hospitals and other county buildings.**

The county commission shall erect courthouses, jails and hospitals and other necessary county buildings, and such county commission shall have authority to levy a special tax for that purpose. Each county within the state shall be required to maintain a jail within their county.

ALA. CODE § 11-14-10.

"acting within their legislative roles," performing "legislative acts." [4] *Brown*, 960 F.2d at 1011 (quoting *Tower v. Glover*, 467 U.S. 914, 920, 104 S. Ct. 2820, 2824, 81 L. Ed. 2d 758 (1984)). But, the immunity "extends only to actions taken within the sphere of legitimate legislative activity." *Id.* (quoting *Finch v. City of Vernon*, 877 F.2d 1497, 1505 (11th Cir. 1989)). It is the nature of the act, and not the position of the actor, which determines when absolute legislative immunity will apply. *See Yeldell*, 956 F.2d at 1062. Thus, whether the Marshall County Commissioners are entitled to such immunity depends upon whether when making budgetary decisions--including budgeting for the county jail--they were acting in their legislative capacity: was approving the budget a "legislative act"?

An act is deemed legislative, rather than administrative or managerial, when it is policymaking and of general application. *See Brown*, 960 F.2d at 1011. "Only those acts which are 'necessary to preserve the integrity of the legislative process' are protected." *Yeldell*, 956 F.2d at 1062 (quoting *United States v. Brewster*, 408 U.S. 501, 517, 92 S. Ct. 2531, 2539, 33 L. Ed. 2d 507 (1972)). "[V]oting, debate and reacting to public opinion are manifestly in furtherance of legislative duties." *DeSisto College, Inc. v. Line*, 888 F.2d 755, 765 (11th Cir. 1989).

In this case, the commissioners' act of passing the budget was legislative: policymaking of general application. The county commissioners deliberated and then voted on a budget resolution for the entire county, not just the jail. The commissioners had a duty to adopt a budget under Alabama Statute § 11-8-3, which requires counties to pass annual budgets for all county-funded agencies and to do so without appropriating more funds than the county expects to collect for that year.

Plaintiffs argue that, although voting--such as voting for a budget--is generally a legislative act, in this case the act of voting on the budget (specifically for the jail) was no legislative act because it was not an act of general application. This concept was the district court's premise as well. We cannot agree.

Voting is not automatically a legislative act. *See Crymes*, 923 F.2d at 1485 (act of voting alone does not make act legislative if the vote simply enforces existing policy instead of creating policy); *see also Smith v. Lomax*, 45 F.3d 402, 405 (11th Cir. 1995). But, in this case, the voting that was needed to pass the county budget was legislative.

---

[4] "Even if the commissioners acted out of evil intent, the legislative nature of the act still controls. *See Ellis v. Coffee County Bd. of Registrars*, 981 F.2d 1185, 1191 (11th Cir. 1993) (Absolute immunity is an absolute protection, not a good faith protection such as qualified immunity.)." *Woods*, 132 F.3d at 1419 n.4.

The statute under which the commissioners were given the authority to pass this budget requires an annual budget for all county expenses.[ ]  Thus, a decision to provide more funds for the jail necessarily results in fewer funds for other public projects: the budget creates policy by allocating limited resources.  *See Rateree v. Rockett*, 852 F.2d 946, 950-51 (7th Cir. 1988) ("Budgetmaking is a quintessential legislative function reflecting the legislators' ordering of policy priorities in the face of limited financial resources.") (citation omitted).  Because the budget sets spending priorities, the passing of the budget is both policymaking and of general application, affecting all county residents.

*Woods*, 132 F.3d at 1419-20 (single footnote omitted).  In *Turquitt*, the Eleventh Circuit stated:

We recognize that Alabama counties possess some duties with respect to county jails.  However, none of these duties relate to the daily operation of the jails or to the supervision of inmates.  The duties of the counties with respect to the jails "are limited to funding the operation of the jail and to providing facilities to house the jail." *Stark v. Madison County*, 678 So. 2d 787, 787 (Ala. Civ. App. 1996).  The county commission is charged with erecting and maintaining jails, and each county is required to maintain a jail of sufficient size and strength to secure the prisoners.  ALA. CODE §§ 11-14-10, 11-14-13 (1989).  In construing these provisions, the Alabama courts have made it clear that the duty of the county to erect and maintain a county jail pertains exclusively to the physical plant of the jail.  The duty to "maintain a jail" under § 11-14-10 is merely the duty to keep the "jail and all equipment therein in a state of repair and to preserve it from failure or decline." *Keeton v. Fayette County*, 558 So. 2d 884, 886 (Ala. 1989).

. . . .

. . . . Most importantly, the Alabama Supreme Court ruled that the statutory mandate that the county "maintain a jail" simply meant that the county must "maintain the jail building and its equipment." *Keeton*, 558 So. 2d at 886.  Alabama's highest court clarified the sheriff's role in *King v. Colbert County*, which held that a county sheriff operates a jail independently of the county commission.  *King v. Colbert County*, 620 So. 2d at 625.  This elucidation of Alabama's law explains that while counties have certain responsibilities with respect to county jails, those responsibilities are clearly enumerated in the statute and relate only to maintaining the jail's physical plant and providing operational funding.  The sheriffs, on the other hand, have full responsibility for daily management of the jails, including inmate supervision, and they are not subject to county oversight in their performance of this responsibility.  *See* ALA. CODE § 14-6-1; *King v. Colbert County*, 620 So. 2d at 625. . . .

*Turquitt*, 137 F.3d at 1289-91.

10

The court does not find that the allegations concerning the role of the County

Commission Defendants in this case are sufficient to support a § 1983 claim against these

defendants.  Their alleged actions in this case fall within their legislative function and not their

administrative function.  *Turquitt* makes it clear that the duties imposed on the County

Commission, the Commissioners, and the County Administrator under ALABAMA CODE §

11-14-10 to erect, maintain, and fund a jail relate to their legislative responsibilities.  To find

otherwise would be contrary to the clear statement in ALABAMA CODE § 14-6-1 that "[t]he sheriff

has the legal custody and charge of the jail in his county and all prisoners committed thereto. . . ."

ALA. CODE § 14-6-1 and the court's holding in *Turquitt.*

### Insufficient Allegations of a Constitutional Claim
### Against the County Commission Defendants

In *Cagle*, 2003 WL 21398226, the plaintiffs brought an action against the sheriff, the

county, the county commissioners, and a jailer after the suicide of a pretrial detainee in the

Winston County Jail.  The facts showed that the detainee, Danny Ray Butler ("Butler"), was

arrested by an Alabama State Trooper for DUI shortly after six o'clock in the evening when he

failed a field sobriety test.[5]  He was taken to Winston County Jail by a Winston County Deputy

while the trooper waited for a tow truck.  During the ride to the jail, Butler told the deputy that

his girlfriend recently hanged herself at the Carbon Hill, Alabama City Jail.  When they arrived at

the Winston County Jail, the deputy told another officer about the suicide comment.  The officer

then informed the defendant jailer about Butler's statement and told him that he should watch

Butler and check on him frequently.  The trooper later arrived at the jail.  In completing the

---

[5] Cagle sued as the personal representative of the estate of Butler.  *Cagle*, 2003 WL 21398226.

11

admissions paperwork, he asked Butler a series of questions concerning Butler's medical history and mental health. Butler answered all the questions and did not indicate a history of mental health problems. Butler did, however, tell the trooper that if he had to stay in jail all night, he would kill himself.

Because Butler was intoxicated, the officers placed him in a cell which was monitored by a video camera. A deputy went to the cell and removed all the items that he thought Butler could use to hurt himself, leaving only the bunk beds and a mattress pad. Because of Butler's suicide threats, the trooper had Butler remove his belt and shoelaces and empty his pockets. Butler was placed in the cell by himself to prevent him from harming someone else or himself. The trooper and a deputy asked the inmates in the adjacent cell to watch Butler through a peephole between the cells that allowed the inmates to check on each other.

After completing the paperwork, the trooper checked on Butler and left the jail. At 9:00 p.m., Jailer Cole performed a cell check and found nothing out of the ordinary. At 9:30 p.m., the deputy that had removed the items from Butler's cell left the jail, leaving only Jailer Cole at the facility. Despite a previous consent decree that had been entered in another jail-conditions lawsuit, which required at least two full-time personnel on duty between 5:00 p.m. and 8:00 a.m., the Winston County Sheriff's Office had only one person in the jail at night.

At 10:46 p.m., Jailer Cole performed another cell check. Jailer Cole saw Butler "sitting upright against the wall with something hanging from the top bunk around his neck." *Cagle*, 2003 WL 21398226, at *1. Jailer Cole immediately called for assistance. Another officer and deputy arrived almost immediately. They went to Butler's cell while Cole remained in the office and called for an ambulance and various other persons, including the Sheriff. By the time the

12

officer and the deputy reached Butler, he was dead, having hanged himself using the elastic from his underwear.

Cagle's sister filed a § 1983 action against the County, the County Commission, and various county officials. The District Court denied the defendants' motion for summary judgment on qualified immunity grounds and they appealed. In addressing the issue of county liability, the Eleventh Circuit stated:

> To subject a county to liability under section 1983 the plaintiff must show that the constitutional violation occurred as a result of a county policy. [*Tittle*, 10 F.3d at 1540.] "[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997). "[P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Id.* at 1389.

*Cagle*, 2003 WL 21398226, at *3. Reversing the trial court's denial of summary judgment, the court stated:

> To establish a defendant's deliberate indifference, the plaintiff has to show that the defendant had "(1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] . . . that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In the case of a county defendant, the plaintiff must point to a policy that demonstrates the County's deliberate indifference. *See Tittle*, 10 F.3d at 1540 (Counties may be liable for violations of constitutional rights only when such violations occur as a result of an official county policy).

*Cagle*, 2003 WL 21398226, at *4. Applying the foregoing considerations, the *Cagle* court concluded that the evidence did not "show that the County's failure to fund a second, nighttime jailer was deliberately indifferent to a '"strong likelihood, rather than a mere possibility," that suicide would result from [the County's] actions or inaction." *Id.* at *4 (citing *Tittle*, 10 F.3d at

13

1540). Specifically, the court stated that neither the failure to comply with the consent decree nor the Sheriff's request for an additional jailer "demonstrate the County's awareness of a strong likelihood for suicide."[6] *Id.*

In the present case, there is no allegation that any of the county commission defendants, including the County Administrator, were "truly aware that prisoners" in the jail were likely to attempt suicide as a result of their action or inaction. There is no allegation that a particular county policy demonstrates that they were deliberately indifferent towards Norred or other individuals in his situation. Thus, the plaintiffs also have failed to adequately state a claim for relief as to these defendants. The § 1983 claim as to them is therefore due to be granted on this ground as well.

### *Respondeat Superior* Liability

The law enforcement defendants, Tirey, Poe, McClusky, Pearson, and Lawrence, assert that they cannot be held individually liable under a *respondeat superior* theory. (Doc. 19 at 3-4). Specifically, they assert that the plaintiffs have failed to adequately connect them to the suicide of Norred. (*Id.* at 4). The plaintiffs retort that "[t]he complaint alleges a failure to properly supervise, negligent/wanton hiring and retention, failure to investigate the backgrounds, competence and/or abilities of Pearson and failing to dispose of the 'tools of suicide.'" (*See* Complaint pp. 5-9). Also, the plaintiffs assert that they allege specific acts, such as a failure to provide adequate medical attention, medication, failure to properly monitor or to provide proper monitoring equipment and understaffing," which warrant the imposition of liability in this action.

---

[6] The decision of the Eleventh Circuit was premised on the fact that neither item nor any other facts showed that "the County was truly aware that prisoners in the Winston County Jail were likely to attempt suicide. The County's decision to fund no additional nighttime watcher was not deliberately indifferent to a substantial likelihood of detainee suicide." *Id.* at *5.

14

(Doc. 23 at 6). The plaintiffs further state that Tirey was aware of the lack of personnel at the jail at the relevant time. (*Id.*, citing Complaint at ¶¶ 14-15).

Supervisory liability is permissible only when the supervisor participates in the alleged conduct or when "some official policy 'causes' an employee to violate another's constitutional rights." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The plaintiffs assert that they are not basing their claims against the law enforcement defendants on a *respondeat superior* theory, but instead, "allege specific acts such as a failure to provide adequate medical attention, medication, failure to properly monitor or to provide proper monitoring equipment and understaffing. These are alleged in the complaint and apply to the individual defendants listed in the defendants' brief [(Defendants Tirey, Poe, McClusky, Pearson and Lawrence)]." (Doc. 23 at 6).

As stated immediately above, "Supervisor liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Dolohite v. Maughon by and through Videon*, 74 F.3d 1027, 1052 (11th Cir.), *cert. denied*, 519 U.S. 870, 117 S. Ct. 185, 136 L. Ed. 2d 123 (1996). To state a claim against an individual supervisor such as Tirey, Poe, McClusky, Pearson, or Lawrence, the plaintiffs must also allege and then demonstrate that these individuals knew of "a substantial risk of serious harm" due to the purported circumstance, *e.g.*, a lack of staffing, training, funding or supervision, and that they "disregarded that risk by failing to take reasonable measures to abate it." *Vinson v. Clark County, Alabama*, 10 F. Supp. 2d 1282, 1296 (S.D. Ala. 1998), citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

15

The court finds that the plaintiffs have not alleged the requisite causal connection in the present case concerning Tirey, Poe, McClusky, and Lawrence.[7]  Unlike Pearson, there is no claim that they were personally involved in the circumstances that led to Norred's suicide.  There is no allegation that they were on notice of Norred's condition or the fact that Pearson or other jail personnel were aware of the situation.  There is no allegation in the complaint that they were aware of former instances of inmate suicides or attempted suicides and that any one of them disregarded the potential risks.  Accordingly, the motion to dismiss is due to be granted as to defendants Tirey, Poe, McClusky, and Lawrence.[8]  The motion, however, is not due to be granted as to Pearson because of the actual notice he is alleged to have received from Norred's doctor.

### The Official Capacity Claims Against the Officers

The law enforcement defendants next assert that the claims against each of them in their official capacity is precluded by the Eleventh Amendment and because they are not persons for purposes of 1983.  (Doc. 19 at 5).  In *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989), the court held that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity because the suit is in fact an action against the state.[9]  Accordingly, the § 1983 official capacity claim against defendant Tirey is due to be dismissed.  Similarly, the other deputy and jailer defendants are entitled to the same immunity to the extent the claims against each of them are premised on their official capacity.  *See Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1429

---

[7] This finding does not apply to Pearson because the complaint alleges that he had actual knowledge of Norred's circumstances.

[8] Additionally, as discussed below, these defendants are due to be dismissed on qualified immunity grounds.

[9] The Eleventh Circuit Court of Appeals en banc in *Turquitt v. Jefferson County*, 137 F.3d 1285, 1291-92 (11th Cir. 1998) (en banc) overruled *Parker*'s separate holding that Alabama sheriffs are county policymakers in their daily management of county jails for purposes of § 1983.

(11th Cir. 1997) (treating jailers the same as deputies and sheriffs).[10]  The defendants' motion to

the extent it seeks dismissal of the claims against these defendants in their official capacities,

including Pearson, is due to be granted.

### The Individual Capacity Claims Against the Defendants and the Applicability of Qualified Immunity

The law enforcement defendants, including Pearson, next assert that they are entitled to

qualified immunity on the § 1983 claim against them in their individual capacities.  (Doc. 19 at

6).  The plaintiffs counter that this matter is not appropriate for consideration on a motion to

dismiss.  (Doc. 23 at 8).  The plaintiffs further retort that the complaint is adequate to state a

claim against these defendants and to overcome their defense of qualified immunity.  (*Id.* at 10).

In support of this claim, they cite *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir.

2002).

In *St. George*, the Eleventh Circuit recently stated:.

. . . .  While the defense of qualified immunity is typically addressed at the
summary judgment stage of a case, it may be, . . . , raised and considered on a
motion to dismiss.  *See Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).
The motion to dismiss will be granted if the "complaint fails to allege the
violation of a clearly established constitutional right."  *Id.* (citing *Williams v. Ala.
State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997)).  Whether the complaint alleges
such a violation is a question of law . . . , accepting the facts alleged in the
complaint as true and drawing all reasonable inferences in the plaintiff's favor.
*Id.*  The scope of the review must be limited to the four corners of the complaint.
*Grossman v. Nationsbank*, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000).  While
there may be a dispute as to whether the alleged facts are the actual facts, in
reviewing the grant of a motion to dismiss, we are required to accept the
allegations in the complaint as true.  *See Wilson v. Strong*, 156 F.3d 1131, 1132

---

[10] Similarly, the claims against the County Commissioners and the County Administrator in their official capacities are
precluded.  A suit against them in their official capacities is a suit against the governmental entities they represent.  *Kentucky v.
Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985); *Owens v. Fulton County*, 877 F.2d 947, 951 n.5
(11th Cir. 1989).

(11th Cir. 1998).  Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff.  *See, e.g., Suissa v. Fulton County*, 74 F.3d 266, 269 (11th Cir. 1996).

The Eleventh Circuit also recently addressed again the applicable considerations in the qualified immunity context following the recent United States Supreme Court ruling in *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002).  It stated:

> The Officer Defendants are entitled to qualified immunity for their acts unless they--given the circumstances--violated a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Hope*, 122 S. Ct. at 2515 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)).  The Supreme Court has said that an official is entitled to "notice [his] conduct is unlawful," *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2158, 150 L. Ed. 2d 272 (2001))(emphasis added), and to "'fair warning' that his conduct deprived his victim of a constitutional right." *Id.* (emphasis added).  This notice or fair warning flows from the applicable law's being "clearly established" at the time of the official's alleged unlawful conduct.
>
> "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987))(emphasis added).  The unlawfulness must have been apparent.  *Id.*  In many--if not most--instances, the apparency of an unlawful action will be established by (if it can be established at all) preexisting caselaw which is sufficiently similar in facts to the facts confronting an officer, such that we can say every objectively reasonable officer would have been on "fair notice" that the behavior violated a constitutional right.
>
> The Supreme Court in the *Hope* opinion stresses that preexisting caselaw with "materially similar" or "fundamentally similar" facts is not always necessary to give an official "fair warning" of unlawful behavior.  *Id.* at 2516.  "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding."  *Id.*  General statements of the law contained within the Constitution, statute, or caselaw may sometimes provide "fair warning" of unlawful conduct:
>
>> [G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may

18

apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.

*Id.* (quoting *United States v. Lanier*, 520 U.S. 259, 117 S. Ct. 1219, 1227, 137 L. Ed. 2d 432 (1997)) (alteration in original) (internal quotation marks and citation omitted).[ ]  Officials sometimes can still receive "notice that their conduct violates established law even in novel factual circumstances." *Id.*

*Willingham v. Loughnan*, 321 F.3d 1299, 1301-02 (11th Cir. 2003) (footnote omitted).

The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).  The *Harlow* case firmly established this doctrine of qualified immunity which, when properly invoked, protects government actors in their individual capacities from federal civil damage claims.  *See id.*; *see also Tinney v. Shores*, 77 F.3d 378, 381 (11th Cir. 1996); *Lassiter v. Alabama A & M University, Board of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994).[ ]  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d  271 (1986).  Qualified immunity is an affirmative defense that must be pled by a defendant.  *See Harlow*, 457 U.S. at 815.  The availability of qualified immunity is a question of law.  *See Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S. Ct. 2806, 2816-17, 86 L. Ed. 2d 411 (1985).

Defendants have asserted a qualified immunity defense in this case.  To be eligible for qualified immunity, a defendant must first demonstrate that he was a public official acting within the scope of his discretionary authority.  *See Rich v. Dollar*, 841 F.2d 1558, 1563-64 (11th Cir. 1988).  The Supreme Court has said that an action is discretionary rather than "ministerial" when the action at issue was "influence [d] by the decisionmaker's experiences, values, and emotions." *Harlow*, 457 U.S. at 816.  Ministerial actions are those acts that do not require the exercise of independent thought or deliberation by the person taking the action. *See Kitchen v. CSX Transp., Inc.*, 6 F.3d 727, 732 (11th Cir. 1993).  The Eleventh Circuit has gone further by providing a concrete standard for determining whether an action is discretionary for purposes of applying the doctrine of qualified immunity.  Qualified immunity is available to a government official--even if his actions appear to be ministerial in nature--so long as the official's actions "'(1) were undertaken pursuant to the performance of his duties,' and '(2) were within the scope of his authority.'" *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir.

1994) (quoting *Rich*, 841 F.2d at 1564 (11th Cir. 1988)). If the conduct at issue falls within this definition, then it is established that the official was acting within the scope of his discretionary authority. *See McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995).

*Vinson v. Clarke County, Ala.*, 10 F. Supp. 2d 1282, 1296-97 (S.D. Ala. 1998).

The law enforcement defendants herein, including Pearson, have properly raised the qualified immunity defense as it is evident that they were performing their duties as law enforcement officers. Thus, the plaintiffs must allege and establish that the defendants violated a "'clearly established statutory or constitutional right[ ] of which a reasonable person would have known.'" *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1395 (11th Cir.), citing *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). The court finds that at the time of Norred's suicide, it was clearly established that "[w]here prison personnel directly responsible for inmate care have knowledge that an inmate has attempted, or even threatened, suicide their failure to take steps to protect that inmate from committing suicide can amount to deliberate indifference." *Greason v. Kemp*, 891 F.2d 829, 835 (11th Cir. 1990).[11]

The allegations in the complaint against Pearson are sufficient to overcome his qualified immunity defense. The plaintiffs allege that he had actual knowledge of Norred's suicidal

---

[11] In *Belcher v. City of Foley, Ala.*, 30 F.3d 1395, 1396 (11th Cir. 1994), involving a pretrial detainee who committed suicide, the court stated:

> Under the Eighth Amendment, prisoners have a right to receive medical treatment for illness and injuries, *Estelle v. Gamble*, 429 U.S. 97, 103-05, 97 S. Ct. 285, 290-91, 50 L. Ed. 2d 251 (1976), which encompasses a right to psychiatric and mental health care, *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986), and a right to be protected from self-inflicted injuries, including suicide, *Edwards*, 867 F.2d at 1274-75. Prison guards who display deliberate indifference to the serious medical and psychiatric needs of a prisoner, or deliberate indifference to a "strong likelihood" that a prisoner will take his own life, violate the Eighth Amendment and may be liable under section 1983. *Estelle*, 429 U.S. at 104-05, 97 S. Ct. at 291; *Edwards*, 867 F.2d at 1274-75; *Rogers*, 792 F.2d at 1058.

tendencies. Specifically, the complaint states that Norred's treating physician called the jail and spoke with Pearson, warning him of Norred's condition, within two hours of Norred being "pronounced dead." (Complaint at ¶¶ 12-13). Although the court in *Cagle* stated "that--under the facts of this case--Jailer Cole's allowing one hour and forty minutes to elapse between jail checks was not deliberately indifferent" despite the fact that the consent decree "required the jailer to check the cells every hour,"[12] this court finds that such factual matters are more appropriate for consideration on a motion for summary judgment.

The issue is not as simple with regard to the remaining law enforcement defendants. No where does the complaint allege that any other defendant had actual notice, knowledge, or information concerning the threat to Norred. There is no allegation that the remaining defendants were even aware of Norred's arrest and his medical condition. The only other reference in the complaint to notice or knowledge on the part of the other jail personnel is found in paragraph 11,

---

[12] The court also stated:

. . . . But *Praytor* [(the case involving the consent decree)] did not establish a constitutional right to hourly jail checks, and Praytor was not focused on preventing suicide.

Jailer Cole was aware that Butler's belt, his shoelaces and the contents of his pockets had been confiscated. Jailer Cole was also aware that Butler's cell had been stripped of implements that might assist suicide. While these facts indicated Butler was a suicide risk, they also decreased the risk. These acts show a lack of deliberate indifference on the part of jail personnel and decreased the likelihood that Butler would commit suicide. *See Popham*, 908 F.2d at 1564. Jailer Cole was not required to foresee that Butler would hang himself with the elastic from his underwear.[ ]

Furthermore, Jailer Cole did not ignore Butler. He was instructed to watch Butler, and he did. The record reflects that Jailer Cole observed Butler through the TV monitor at least every 15 minutes. Closed circuit TV monitoring reflects concern for a prisoner's welfare and a lack of deliberate indifference. *Id.* The TV camera reached almost all of the cell.[ ] "The fact that the camera did not pick up every corner of the cell might be evidence of negligence, but could hardly demonstrate deliberate indifference." *Id.*

Assuming that Jailer Cole was aware that Butler had threatened suicide, Cagle points to no evidence establishing that Jailer Cole acted with deliberate indifference to this risk. Jailer Cole did not violate Butler's constitutional rights.[ ]

*Cagle*, at *6-7 (footnotes omitted).

21

which states that Norred's family members "called the Walker County Sheriff's Department,

notified the department of [his] mental condition and requested that he be placed on a suicide

watch." (Complaint at ¶ 11). The defendants argue that this is insufficient. The Eleventh Circuit

recently stated:

> Despite the lenience of the Federal Rules of Civil Procedure, it is axiomatic that defendants remain entitled to know exactly what claims are being brought against them. *See* FED. R. CIV. P. 8 & 10. Where the specter of frivolous or retaliatory litigation is high, courts sometimes impose heightened pleading requirements to ensure that potential defendants are not deterred from engaging in socially beneficial activity. Such is the case with § 1983. As Defendants point out, the Eleventh Circuit requires § 1983 plaintiffs to fulfill a higher standard of specificity in their complaints. *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.) (citing *Arnold v. Bd. of Educ.*, 880 F.2d 305, 309 (11th Cir. 1989)); *GJR Investments, Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1367 (11th Cir. 1998) ("Some factual detail in the pleadings is necessary . . . in cases involving qualified immunity, where [the Court] must determine whether a defendant's actions violated a clearly established right.").

*Omar ex rel. Cannon v. Lindsey*, ___F.3d___, 2003 WL 21480389, at *5 (11th Cir. June 26,

2003).

The court does not find that the complaint meets the heightened pleading requirements in

§ 1983 cases. To the extent that the plaintiffs' argue that paragraphs 14 and 15 of the complaint,

dealing with the fact that the jail was "understaffed, underfunded, and inadequately monitored,"

is premised, in part, on conversations with Sheriff Tirey, the court still finds the complaint

insufficient. (Complaint at ¶¶ 14-15). These allegations do not sufficiently assert that the law

enforcement defendants other than Pearson were "deliberately indifferent to a 'strong likelihood,

rather than a mere possibility,' that [a] suicide would result." *Cagle*, 2003 WL 21398226, at *4.

The claims are due to be dismissed as to these defendants.

22

## The State Law Claims and Sovereign Immunity

The law enforcement defendants next assert that the state law claims against them are due to be dismissed because they are entitled to sovereign immunity. (Doc. 19 at 9). They cite to *Parker v. Amerson*, 519 So. 2d 442 (Ala. 1987), and subsequent authorities in support of their claim. (*Id*. at 9-10). They also note that the only exception, which is not applicable herein, because there is no claim for injunctive relief, is found in Article I, § 14 of the Alabama Constitution. (*Id*. at 10). They further assert that these claims are due to be dismissed premised on Eleventh Amendment immunity. (*Id*. at 11). *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 99-100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984), is cited in support of this contention.

The plaintiffs retort that the defendants cannot avoid liability in this action simply by asserting that they are state officials and therefore they have state constitutional immunity. (Doc. 23 at 10). They further state that if the individual defendants depart from the line and scope of their employment, each can be held liable for his individual actions. (*Id*.).

The Eleventh Circuit has held that individual capacity claims against an Alabama sheriff for money damages are barred by the doctrine of sovereign immunity, even when the claims involve malicious or intentional wrongdoing. *McMillian v. Johnson*, 101 F.3d 1363, 1364-65 (11th Cir. 1996) (citing *Tinney v. Shores*, 77 F.3d 378 (11th Cir. 1996)) ("the holding [of which] is clear: under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity"). Similarly, deputy sheriffs are also immune from suits in their official and individual capacities for state law torts. *Alexander v. Hatfield*, 652 So. 2d 1142 (Ala. 1994). *Accord Ex parte Haralson*, ___ So. 2d ___, 2003 WL 21674801 (Ala. July 18,

23

2003).  Because jailers are deemed to be the alter ego of the sheriff, they also are entitled to assert the sovereign immunity defense.[13]  *Lancaster*, 116 F.3d at 1431.

Although "sovereign immunity does not protect State officers and employees under circumstances where a plaintiff alleges that they acted 'willfully, maliciously, illegally, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law,' there is no allegation of such conduct in the present complaint."  *Taylor v. Alabama*, 95 F. Supp. 2d 1297, 1320-21 (M.D. Ala. 2000), quoting *Ex parte Alabama Dep't of Transp.*, 764 So. 2d 1263, 1268 (Ala. 2000) (citing *Phillips*, 555 So. 2d at 83).[14]  Thus, the state law claims are due to be dismissed as to these defendants.[15]

### Punitive Damages Claim

The defendants lastly assert that the plaintiffs' request for punitive damages is due to be stricken.  (Doc. 19 at 12).  In support of this claim, they cite *City of Newport v. Fact Concerts*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981).  Therein, the Supreme Court held that punitive damages against a municipality could not be awarded under 42 U.S.C. § 1983.  The plaintiffs retort that punitive damages are available in individual capacity claims.  (Doc. 23 at 11).  The plaintiffs acknowledge that punitive damages are not recoverable against a county or governmental agency.  (*Id.*).

---

[13] Jailers have a statutory duty to obtain medical care for sick prisoners. *See Ala. Code* § 14-6-19. *Lancaster*, 116 F.3d at 1431.

[14] None of the other exceptions listed in *Parker* apply because the plaintiffs are seeking monetary damages, not an injunction, mandamus, or a declaratory judgment. *See Vinson*, 10 F. Supp. 2d at 1305.

[15] These claims would also be due to be dismissed as to the County Commissioner defendants because, as already discussed, they do not have the requisite control over jail operations and custodial supervision of the inmates to impose liability in the present case. *Vinson*, 10 F. Supp. 2d at 1303-04.

The parties are correct that punitive damages would not be recoverable under § 1983 against the county or the State of Alabama. *See* ALA. CODE § 6-11-26.[16] They are recoverable for the individual capacity claim against Pearson under § 1983. *See Gaines v. Choctaw County Com'n*, 242 F. Supp. 2d 1153, 1166 (S.D. Ala. 2003) (punitive damages are permissible in individual capacity claims).[17]

## CONCLUSION

Accordingly, for the reasons stated above, the court finds that the defendants' motion for summary judgment is due to be granted in part and denied in part as follows:

    1. The plaintiffs' § 1983 claims against the County Commission defendants (Bruce Hamrick, Dual Tubbs, Wes Eaton, Ben Huggins, and Randy Bridges) and County Administrator Jean Franklin are due to be dismissed with prejudice;

    2. The plaintiffs' § 1983 claims against the law enforcement defendants (Sheriff Tirey, Chief Jailer Poe, Officer Trent McClusky, Officer Ronald Pearson,

---

[16] Section 6-11-26 provides:

**No punitive damages awarded against state or agency thereof.**

    Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof, except any entity covered under the Medical Liability Act now codified as Section 6-5-480 et seq., or any acts amendatory thereto.

ALA. CODE § 6-11-26.

[17] State law specifically exempts the punitive damages prohibition in wrongful death actions. *See* ALA. CODE § 6-11-29. Section 6-11-29 provides:

**Wrongful death actions not affected.**

    This article shall not pertain to or affect any civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, as amended.

ALA. CODE § 6-11-29. However, because this claim is due to be dismissed, this aspect of the case is moot.

25

and former Officer Howard Lawrence) are due to be dismissed without prejudice except for the Fourteenth Amendment Due Process claim against Pearson;

3. The plaintiffs' state law claims against the County Commission defendants and the County Administrator are due to be dismissed with prejudice;

4. The plaintiffs' state law claims against the law enforcement defendants in their official and individual capacities are due to be dismissed with prejudice;

5. The plaintiffs' claims for punitive damages against the defendants in their official capacities are due to be dismissed;

6. The plaintiffs' § 1983 claim to the extent it seeks punitive damages against defendant Pearson in his individual capacity is not due to be dismissed.

An order consistent with this court's findings will be entered.

The Clerk of the Court is **DIRECTED** to serve a copy of this memorandum opinion upon counsel of record.

**DATED**, this ⁫ day of August, 2003.

_____

**JOHN E. OTT**
United States Magistrate Judge

26