IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| JAMES EDWARD NORRED, individually, and as the custodial parent and next friend of JAMES EDWARD NORRED, II, a deceased minor; and JENNIFER NORRED, individually,<br><br>    Plaintiffs,<br><br>v.<br><br>JOHN MARK TIREY; JOHN CURTIS "J.C." POE; TRENT MCCLUSKY; RONALD PEARSON; HOWARD LAWRENCE; and MONICA DAY,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CV 02-JEO-2596-J<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ENTERED**

**SEP - 9 2004**

## MEMORANDUM OPINION

The plaintiffs in this action have filed an amended complaint alleging various claims against the defendants premised on the suicide of James Edward Norred, II (hereinafter "Norred"), at the Walker County Jail. On December 26, 2002, the defendants filed a motion to dismiss the plaintiffs' original complaint (doc. 18), which the court granted in part and denied in part.[1] Thereafter, the plaintiffs filed their Amended Complaint, again asserting claims against all of the law enforcement defendants named in the original complaints (doc. 1) as well as Jailer Monica Day. (Doc. 38). In their amended complaint, the plaintiffs do not attempt to state a cause of action against the defendants in their official capacities, but instead assert allegations

---

[1] The plaintiffs' original complaint included Walker County commissioners Bruce Hamrick, Dual Tubbs, Wes Eaton, Ben Hudgens, and Randy Bridges, as well as Walker County Administrator Jean Franklin as defendants and claims against the law enforcement defendants named herein in their official capacities. The court dismissed the claims against Randy Bridges, Ben Hudgens, Wes Eaton, Dual Tubbs, Bruce Hamrick, and Jean Franklin with prejudice, and those against Howard Lawrence, Trent McClusky, John Curtis "J.C." Poe, and John Mark Tirey without prejudice. Additionally, the court denied the defendants' motion to dismiss as it pertained to the Fourteenth Amendment Due Process claim against Pearson and the plaintiffs' claim for punitive damages against Pearson in his individual capacity. (Doc. 36 & 37).

against the defendants in their individual capacities only. The plaintiffs assert that each of the defendants violated Norred's Eighth and Fourteenth Amendment rights, in contravention of Title 42, United States Code, Section 1983. (Amended Complaint at ¶¶ 1, 19-42 (Count One)). They also allege "wrongful death" pursuant to ALABAMA CODE § 6-5-410. (Count Two at ¶¶ 43-53). The plaintiffs seek monetary damages, injunctive relief, and other "relief as the court may deem just and proper." (Amended Complaint at 12 & 15).

The defendants filed their motion to dismiss the plaintiffs' amended complaint, asserting that (1) they cannot be held liable on a *respondeat superior* theory; (2) the Eighth Amendment is not applicable because Norred was a pretrial detainee; (3) the official capacity claims against the officers are barred; (4) the individual capacity claims against the defendants are precluded by qualified immunity; (5) the state law claim is due to be dismissed premised on sovereign immunity; and, (6) the claim for punitive damages is due to be stricken. (Doc. 48 at ¶¶ 1-6).

## MOTION TO DISMISS STANDARD

On a motion to dismiss, the court "must accept the allegations set forth in the complaint as true. *See United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc)." *Lotierzo v. Woman's World Medical Center, Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). Similarly, it must construe all the factual allegations in the light most favorable to the plaintiff. *Sofarelli v. Pinellas County*, 931 F.2d 718, 721 (11th Cir. 1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1947)). Such a motion may be granted only "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)." *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387

2

(11th Cir.), *cert. denied*, 525 U.S. 1000, 119 S. Ct. 509, 142 L. Ed. 2d 422 (1998).

## DISCUSSION

In their amended complaint, the plaintiffs assert that Norred was arrested on November 3, 2001, at 5:30 a.m., and was taken to the Walker County Jail. (Amended Complaint at ¶ 9). At the time of Norred's arrest, and for an extended time prior to his arrest, Norred suffered from depression and psychosis with suicidal ideation. Norred was under the care of Dr. Mark J. Richman for depression and psychosis and took prescribed medications to regulate these conditions. (Amended Complaint at ¶ 10). After Norred was detained, his family made several calls to the Walker County Sheriff's Department and spoke to various law enforcement personnel and jail employees, including Pearson, to advise them about his mental condition and that he was a suicide risk. Norred's family requested that he be put on suicide watch and instructed that he needed medical attention and his medications for his condition. (Amended Complaint at ¶ 11).

At 6:24 p.m. that evening, Norred's physician, Dr. Richman called the jail and spoke with defendant Pearson. Dr. Richman advised Pearson that Norred was a suicide risk and requested that he be put on suicide watch. (Amended Complaint at ¶ 12). At or about 8:20 p.m., Norred was pronounced dead by asphyxiation after he was found hanging by a bed sheet in his cell at the Walker County Jail. (Amended Complaint at ¶ 14).

The plaintiffs further allege that Norred, who was a minor, was in a cell with adult inmates and without supervision in contravention of Alabama law. Moreover, the plaintiffs allege that prior to Norred's death, minors were routinely taken into custody and incarcerated at the Walker County Jail and that other inmates had attempted and successfully committed suicide while in custody there. Additionally, the plaintiffs allege that on November 3, 2001, the jail

housed more than 200 inmates and had only four jailers to monitor, supervise, feed, and protect the inmates. (Amended Complaint at ¶¶ 15-18).

### Applicability of the Eighth Amendment

As they did in the first motion to dismiss (doc. 18), the defendants assert that the plaintiffs' Eighth Amendment claims are not appropriate because Norred was a pretrial detainee at the time of his death. (Doc. 49 at 3). The plaintiffs retort that

> the 11th Circuit has held that pre-trial detainees are not protected by the Eighth Amendment, but under the Due Process Clause of the Fourteenth Amendment[,] . . . in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care[,] the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons. (Citation omitted).

(Doc. 54 at 5).

The court's reasoning regarding the plaintiffs' Eighth Amendment claims is the same on the instant motion as it was on the previous one. In *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996), the Eleventh Circuit stated as follows:

> Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. *E.g., Bell v. Wolfish*, 441 U.S. 520, 535 & n.16, 99 S. Ct. 1861, 1872 & n.16, 60 L. Ed. 2d 447 (1979); *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 n.4 (11th Cir. 1995); *Jordan v. Doe*, 38 F.3d 1559, 1564-65 (11th Cir. 1994). However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees. *E.g., Jordan*, 38 F.3d at 1564-65 (citing *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S. Ct. 1492, 89 L. Ed. 2d 894 (1986)).
>
> "'[I]n a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under either the eighth or fourteenth amendment, the plaintiff must show that the jail official [defendant] displayed "deliberate indifference" to the prisoner's taking of his own life.' *Edwards v. Gilbert*, 867 F.2d 1271,

1274-75 (11th Cir. 1989) (citations omitted)." *Tittle v. Jefferson County Com'n*, 10 F.3d 1535, 1539 (11th Cir. 1994).

> Deliberate indifference, in the context of a jail suicide case, is a question of whether a defendant was deliberately indifferent to an individual's mental condition and the likely consequences of that condition. *Wright v. Wagner*, 641 F.2d 239, 242 (5th Cir. Unit A March 1981).[ ] Moreover, in this circuit a finding of deliberate indifference requires that officials have notice of the suicidal tendency of the individual whose rights are at issue in order to be held liable for the suicide of that individual. *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990) (noting that "[a]bsent knowledge of a detainee's suicidal tendencies, the cases have consistently held that failure to prevent suicide has never been held to constitute deliberate indifference.")[ ] In *Schmelz v. Monroe County*, 954 F.2d 1540, 1545 (11th Cir. 1992), this court explained that "[n]o matter how defendants' actions might be viewed, the law in this circuit makes clear that they cannot be liable under § 1983 for the suicide of a prisoner "who never had threatened or attempted suicide and who had never been considered a suicide risk.'" (quoting *Edwards*, 867 F.2d at 1277).[ ] Finally, this court finds that deliberate indifference can only be established where a plaintiff demonstrates a "'strong likelihood, rather than a mere possibility,'" that suicide would result from a defendant's actions or inaction. *Edwards*, 867 F.2d at 1276 (citations omitted). Thus, the mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners. *See Popham*, 908 F.2d at 1564.

*Tittle*, 10 F.3d at 1540 (footnotes omitted). *Accord Cagle v. Sutherland*, ___F.3d ___, 2003 WL 21398226 (11th Cir. June 18, 2003).

Accordingly, the plaintiffs' Eighth Amendment claim is due to be dismissed and their Fourteenth Amendment Due Process claim is due to be assessed under the foregoing considerations.

### *Respondeat Superior* Liability

Defendants John Mark Tirey, J.C. Poe, Trent McClusky, and Howard Lawrence[2] assert that they cannot be held personally liable under a *respondeat superior* theory. (Doc. 49 at 2).

---

[2] The defendants neglect to include Monica Day in their argument. However, the court presumes that they argue on her behalf as well.

Specifically, they assert that the plaintiffs have failed to adequately connect them to the suicide of Norred as "there is no allegation that any of the Defendants were present or otherwise personally involved in this incident or, in any way, caused one of their employees to violate the Decedent's rights." (*Id.*). The plaintiffs retort that "[n]o reasonable reading of the complaint can lead" to the conclusion that the Norreds' allegations "are tantamount to counts seeking liability under § 1983 on a respondeat superior theory." (Doc. 54 at 3). Instead, the plaintiffs maintain that

> [e]ach allegation against the law enforcement defendants describes the nature and substance of the constitutional deprivations the defendants personally caused by their direct conduct and their failure to perform their affirmative duties with the subjective knowledge that Jason II (1) was detained at the jail, (2) was a known suicide risk due to his previous diagnosis of depression and psychosis, (3) needed supervision and monitoring due to his suicide risk status, and (4) needed medical attention to treat him for his depression and psychosis[, and that] [w]ith regard to defendant Sheriff Tirey, the Norreds' allegations are specific and sufficient to establish his personal role (1) in directly depriving Jason II of his protected rights and (2) in failing to implement necessary policies, procedures and training so as to prevent his subordinate deputies and jailers from violating the constitutional rights of detainees, including Jason II. Finally, the complaint clearly alleges that the described constitutional deprivations proximately caused Jason II's suicide and death.

(Doc. 54 at 3-4).

Supervisory liability is permissible only when the supervisor participates in the alleged conduct or when "some official policy 'causes' an employee to violate another's constitutional rights." *Monnell v. New York City Dept. of Social Services*, 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The plaintiffs assert that they are not basing their claims against the law enforcement defendants on a *respondeat superior* theory, but instead, allege specific acts by which the defendants caused Norred's suicide.

6

As stated immediately above, "Supervisor liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Dolohite v. Maughon by and through Videon*, 74 F.3d 1027, 1052 (11th Cir.), *cert. denied*, 519 U.S. 870, 117 S. Ct. 185, 136 L. Ed. 2d 123 (1996). To state a claim against an individual supervisor such as Tirey, Poe, McClusky, or Lawrence, the plaintiffs must also allege, and then demonstrate, that these individuals knew of "a substantial risk of serious harm" due to the purported circumstance, *e.g.*, a lack of staffing, training, funding or supervision, and that they "disregarded that risk by failing to take reasonable measures to abate it." *Vinson v. Clark County, Alabama*, 10 F. Supp. 2d 1282, 1296 (S.D. Ala. 1998), citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

The court finds that the plaintiffs have alleged the requisite causal connection at this juncture in the case and that the defendants have failed to show "beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." Accordingly, the motion to dismiss is due to be denied as to the plaintiffs' supervisory liability claims at this juncture.

### The Individual Capacity Claims Against the Defendants and the Applicability of Qualified Immunity

The defendants next assert that they are entitled to qualified immunity on the § 1983 claim against them in their individual capacities. (Doc. 49 at 4-6). The plaintiffs counter that "[t]he defendants' simple act of pleading the affirmative defense of 'qualified immunity' does not defeat a valid cause of action under § 1983." (Doc. 54 at 5). The plaintiffs further retort that

their complaint "abundantly meets the proper standard" to state a cause of action. (*Id.* at 6).

The law enforcement defendants herein have properly raised the qualified immunity defense as it is evident that they were performing their duties as law enforcement officers. Thus, the plaintiffs must allege and establish that the defendants violated a "'clearly established statutory or constitutional right[ ] of which a reasonable person would have known.'" *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1395 (11th Cir.), citing *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). As the court pointed out in its previous memorandum opinion (doc. 36 at 20), the court finds that at the time of Norred's suicide, it was clearly established that "[w]here prison personnel directly responsible for inmate care have knowledge that an inmate has attempted, or even threatened, suicide their failure to take steps to protect that inmate from committing suicide can amount to deliberate indifference." *Greason v. Kemp*, 891 F.2d 829, 835 (11th Cir. 1990).[3]

The allegations in the complaint are sufficient to overcome the qualified immunity defense at the motion to dismiss stage. If, after discovery, the plaintiffs are unable to show that any of the individual defendants had knowledge of Norred's suicidal tendencies, then the defendants will be able to assert their qualified immunity defense at that time. At this juncture,

---

[3] In *Belcher v. City of Foley, Ala.*, 30 F.3d 1395, 1396 (11th Cir. 1994), involving a pretrial detainee who committed suicide, the court stated:

> Under the Eighth Amendment, prisoners have a right to receive medical treatment for illness and injuries, *Estelle v. Gamble*, 429 U.S. 97, 103-05, 97 S. Ct. 285, 290-91, 50 L. Ed. 2d 251 (1976), which encompasses a right to psychiatric and mental health care, *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986), and a right to be protected from self-inflicted injuries, including suicide, *Edwards*, 867 F.2d at 1274-75. Prison guards who display deliberate indifference to the serious medical and psychiatric needs of a prisoner, or deliberate indifference to a "strong likelihood" that a prisoner will take his own life, violate the Eighth Amendment and may be liable under section 1983. *Estelle*, 429 U.S. at 104-05, 97 S. Ct. at 291; *Edwards*, 867 F.2d at 1274-75; *Rogers*, 792 F.2d at 1058.

the complaint adequately states that Norred's treating physician and family called the jail and spoke with Pearson and others, warning them of Norred's condition. (Amended Complaint at ¶¶ 11-18). The complaint further alleges that the defendants had notice and knowledge of the fact that Norred was a suicide risk and that he required medication for his condition.

The Eleventh Circuit recently stated:

> Despite the lenience of the Federal Rules of Civil Procedure, it is axiomatic that defendants remain entitled to know exactly what claims are being brought against them. *See* FED. R. CIV. P. 8 & 10. Where the specter of frivolous or retaliatory litigation is high, courts sometimes impose heightened pleading requirements to ensure that potential defendants are not deterred from engaging in socially beneficial activity. Such is the case with § 1983. As Defendants point out, the Eleventh Circuit requires § 1983 plaintiffs to fulfill a higher standard of specificity in their complaints. *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.) (citing *Arnold v. Bd. of Educ.*, 880 F.2d 305, 309 (11th Cir. 1989)); *GJR Investments, Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1367 (11th Cir. 1998) ("Some factual detail in the pleadings is necessary . . . in cases involving qualified immunity, where [the Court] must determine whether a defendant's actions violated a clearly established right.").

*Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1250-51 (11th Cir. 2003).

The court finds that the complaint adequately puts the defendants on notice of the claims asserted against them. Specifically, the plaintiffs allege that each of the defendants (1) deprived Norred of his right to medical care and protection against self-injury (*see Belcher*, 30 F.3d at 1396) and (2) failed to take measures to protect Norred from committing suicide despite their knowledge that he was a suicide risk. (*See Greason*, 891 F.2d at 835). Regarding Sheriff Tirey, the plaintiffs allege that he deprived Norred of his Fourteenth Amendment rights by (1) staffing the jail with jailers who were not trained with respect to suicidal detainees; (2) failing to train jailers on how to handle suicidal detainees, including the protection, supervision, and monitoring of suicidal detainees; and (3) implementing policies with deliberate indifference to the medical

and safety needs of detainees despite his awareness that detainees, including Norred, posed substantial risks of harm to themselves and to each other. (Doc. 54 at 7-8). Finally, the complaint alleges that Sheriff Tirey's violations of these clearly established laws proximately caused Norred's death. (*Id*. at 9). Contrary to the defendants' assertion that the "benefit of the doubt should operate in favor of each of the Defendants in this cause" (doc. 49 at 6), at this stage of litigation, the allegations must be viewed in the plaintiffs' favor. These allegations are sufficient to defeat the defendants' motion to dismiss.

### The State Law Claims and Sovereign Immunity

The defendants next assert that the state law claims against them are due to be dismissed because they are entitled to sovereign immunity. (Doc. 49 at 6-8). They cite to *Parker v. Amerson*, 519 So. 2d 442 (Ala. 1987), and subsequent authorities in support of their claim. (*Id*.). They also note that the only exception is found in Article I, § 14 of the Alabama Constitution. (*Id*. at 8). They further assert that these claims are due to be dismissed premised on Eleventh Amendment immunity. (*Id*. at 8-9). *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 99-100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984), is cited in support of this contention.

The plaintiffs retort that state agents are not immune from civil liability in their personal capacities ". . . when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." (Citing *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)). (Doc. 54 at 9). The plaintiffs allege that the defendants acted "willfully, maliciously, illegally, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law" when they failed to properly provide the requisite supervision and monitoring of Norred as required by Alabama law; and that Sheriff Tirey acted "willfully,

maliciously, illegally, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law" when he failed to properly implement the proper policies, procedures, practices, and customs that failed to properly train and supervise the deputies, jailers, and/or attendants to provide the requisite monitoring and supervision of Norred. (Amended Complaint at 38). Although these allegations may be difficult to support, at this juncture the defendants' motion to dismiss is due to be denied as to the plaintiffs' state law claims as well.

### Punitive Damages Claim

The defendants lastly assert that the plaintiffs' request for punitive damages is due to be stricken. (Doc. 49 at 9). In support of this claim, they cite *City of Newport v. Fact Concerts*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981). Therein, the Supreme Court held that punitive damages against a municipality could not be awarded under 42 U.S.C. § 1983. The plaintiffs retort that the claims against these defendants are specifically limited to their individual capacities, and thus, not in their capacities as "state officials." (Doc. 54 at 11). Further, the plaintiffs argue that in a wrongful death action, all damages are punitive damages. Ala. Code § 6-5-410.

Although punitive damages would not be recoverable under § 1983 against the county or the State of Alabama, (*see* ALA. CODE § 6-11-26[4]), they are recoverable for the individual capacity claims under § 1983. *See Gaines v. Choctaw County Com'n*, 242 F. Supp. 2d 1153,

---

[4] Section 6-11-26 provides:

**No punitive damages awarded against state or agency thereof.**

Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof, except any entity covered under the Medical Liability Act now codified as Section 6-5-480 et seq., or any acts amendatory thereto.

ALA. CODE § 6-11-26.

1166 (S.D. Ala. 2003) (punitive damages are permissible in individual capacity claims). Additionally, should the plaintiffs be able to establish a wrongful death claim against these defendants, they would be entitled to punitive damages.[5]

## CONCLUSION

Accordingly, for the reasons stated above, the court finds that the defendants' motion to dismiss is due to be denied in part and granted in part.[6]

The Clerk of the Court is **DIRECTED** to serve a copy of this memorandum opinion upon counsel of record.

DONE, this 9th day of September, 2004.

JOHN E. OTT
United States Magistrate Judge

---

[5] State law specifically exempts the punitive damages prohibition in wrongful death actions. *See* ALA. CODE § 6-11-29. Section 6-11-29 provides:

> **Wrongful death actions not affected.**
>
> This article shall not pertain to or affect any civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, as amended.

ALA. CODE § 6-11-29.

[6] The defendants also seek to have the plaintiffs' claims against them in their "official capacities" dismissed. However, the plaintiffs have not asserted any claims against these defendants in their official capacities. As such, the court has not addressed that portion of the defendants' motion.